Gabrielli, J.
Petitioner has challenged a regulation promulgated by the State Department of Social Services which disqualifies welfare recipients from receiving assistance for 30 days for failure to comply with the work referral program established by that department pursuant to subdivision 5 of section 131 of the Social Services Law. It is claimed that the regulation (18 NYCRR 385.7 [a]) conflicts with section 131 of the Social Services Law and is in excess of the statutory authority conferred upon the Department of Social Services. Additionally, petitioner asserts that even if the regulation is not an unwarranted exercise of administrative authority, it is nevertheless unreasonable and arbitrary and hence, invalid (see Grossman v Baumgartner, 17 NY2d 345, 349-350). Special Term confirmed the determination of the Commissioner of Social Services that petitioner had not established a valid reason for failure to report for a job interview, but nevertheless struck down the regulation as arbitrary and capricious. The Appellate Division reversed, holding that the regulation was a valid exercise of administrative power. We agree.
Since February, 1973, petitioner, a 23-year-old woman, has received public assistance from the Albany County Department of Social Services.[1] The county agency suspended petitioner’s benefits for 30 days because of her failure to accept a job referral, in violation of regulations adopted in 1963 (18 NYCRR 385.7 [a]). She claimed that illness and a doctor’s appointment prevented her from attending the interview on the day in question but, following a fair hearing requested by her, it was found and, indeed, petitioner concedes that she did not attend a doctor’s appointment, and missed the interview without good cause. The commissioner therefore determined that petitioner had wrongfully refused employment in violation of subdivision 5 of section 131 of the Social Services Law *567 and confirmed the county agency’s decision imposing a 30-day suspension of benefits.
Subdivision 5 of section 131 of the Social Services Law provides, in pertinent part, that,
"[n]o assistance or care shall be given to an employable person who * * * has refused to accept employment in which he is able to engage.
"A person shall be deemed to have refused to accept such employment if he:
* * Tl *
"b. willfully fails to report for an interview at an employment office with respect to employment when requested to do so by such office”.
The challenged regulation promulgated pursuant to this statute provided:[2] "A person who * * * (2) without good cause * * * refuses to accept referral to and work in employment, including work relief, in which he is able to engage, shall be:
(i) disqualified from receiving assistance for 30 days thereafter and until such time as he is willing to comply with the requirements of this Part;” (18 NYCRR 385.7 [a]).
It is initially argued that the regulation is an improper exercise of authority on the part of the Department of Social Services because a 30-day suspension is not specifically permitted by section 131 of the Social Services Law. We conclude, however, that there is ample authority in the Social Services Law to sustain the validity of the regulation. Subdivision 1 of section 131 of the Social Services Law provides that it shall be the duty of Social Services officials "to provide adequately for those unable to maintain themselves, in accordance with the requirements of this article and other provisions of this chapter” (emphasis added). The legislative goal expressed in section 131 is to place welfare recipients capable of working on the employment rolls. In enacting subdivision 5 the Legislature has sought to secure compliance with the work referral program in order to assure that employable persons seek and find employment and, hence, become able to maintain themselves without public assistance. The Governor’s memorandum approving the addition of section 131 plainly indicates that the Legislature intended to confer upon the Department of *568 Social Services the authority to suspend the welfare benefits of persons who are able to work but refuse to seek employment, and states that:
"This bill would require the Social Welfare Department to refuse assistance to any employable person * * * who refused suitable employment.
* * *
"As a reflection of legislative purpose that persons who can and should seek employment should not be eligible for home relief and other assistance, the bill is unobjectionable” (NY Legis Ann, 1959, pp 449-450).
As a condition for eligibility for public assistance, therefore, employable persons must comply with the work referral program established by the Department of Social Services or face suspension of public assistance benefits.
Sections 20 and 34 of the Social Services Law authorize the department and Commissioner of Social Services to establish regulations in furtherance of their powers and duties under the statute. Section 20 provides that the department may "establish rules, regulations and policies to carry out its duties under this chapter;” and section 34 confers upon the commissioner the power to "establish regulations for administration of public assistance and care within the state”. These general grants of authority are supportive of the validity of the suspension provision as the implementation of the legislative policy expressed in section 131.
Moreover, the department’s interpretation of the scope of subdivision 5 of section 131 is entitled to considerable weight. In Matter of Howard v Wyman (28 NY2d 434, 438), we remarked that "[i]t is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld [citations omitted] '* * * The administrative determination is to be accepted by the courts "if it has 'warrant in the record’ and a reasonable basis in law.” ’ ”
We turn now to petitioner’s additional claim that the regulation, even if validly adopted, should nevertheless be stricken as an arbitrary and capricious exercise of administrative authority without rational basis. This contention is rejected. The regulation is a reasonable exercise of discretion by the department in effectuating the purpose and intent of section 131 of the Social Services Law and striking a balance between *569 the interests of recipients of public assistance and those of the State which must allocate limited welfare funds among those most in need of aid (cf. Matter of Levine v Whalen, 39 NY2d 510, 518; Grossman v Baumgartner, 17 NY2d 345, 349-350, supra).
Petitioner urges that the department interpret the statute to require only that one be willing to comply with the work referral program and that disqualification from benefits should attach only so long as a recipient fails to co-operate. This approach would render the statute virtually impotent. A recipient who is able to work may on one occasion refuse employment and on another represent that he is willing to comply with the work referral program. Nevertheless, that individual may again refuse employment or an interview for employment and be immune from disqualification as long as he subsequently states his readiness to comply with the regulations. Thus, one may continually refuse to attend job interviews and yet assert immediately thereafter that he is willing to abide by the rules and regulations. Such an obvious evasion of the statutory policy by a person able to work was certainly not intended by the Legislature.
Just recently, we have been confronted with the fiscal burdens imposed by the welfare system upon local governments (see Matter of Toia v Regan, 40 NY2d 837). In light of the long persisting crisis in which the State and its political subdivisions found themselves, appropriate measures were taken by the Department of Social Services in furtherance of the legislative goal that only those persons who are incapable of maintaining themselves be allocated the ever more scarce resource of welfare benefits (New York Dept. of Social Servs. v Dublino, 413 US 405, 415). While we are aware that the sanction may appear harsh to the petitioner, and the wisdom of the regulation by which it is employed has not gone unquestioned (see Report of Governor’s Task Force on Human Services, April, 1975, pp 14, 17), it is not the function of this court to sit in review of legislative policy and the rationally based implementation thereof by an administrative agency, so long as no constitutional or statutory mandate is violated (see Dandridge v Williams, 397 US 471, 487). Ordinarily, as the court aptly remarked in that case, "the intractable economic, social and even philosophical problems presented by public welfare assistance programs are not the business of this Court.” We can find no compelling constitutional or statutory *570 reason to overturn the judgment of public officials charged with the onerous responsibility of disbursing limited welfare funds. Petitioner is constrained to challenge the wisdom and efficacity of the legislative choice and the harshness of the regulation through the administrative and legislative processes.
No extended discussion is necessary to dispose of petitioner’s secondary claims based on State and Federal constitutional grounds. Section 1 of article XVII of the New York State Constitution mandates only that the "needy” and those unable to care for themselves be afforded aid and support "in such manner and by such means, as the Legislature may from time to time determine.” The Legislature may in its discretion deny aid to employable persons who may properly be deemed not to be needy when they have wrongfully refused an opportunity for employment. Similarly, the 30-day suspension of benefits is not violative of the interdiction in thé Eighth Amendment of the United States Constitution against cruel and unusual punishment because it serves a valid governmental purpose to assure that only the truly needy obtain public welfare benefits (see Trap v Dulles, 356 US 86, 96-97). The 30-day suspension is a regulatory measure designed to effectuate the legislative decision to exclude those who are able to work but refuse to seek or accept employment from welfare benefits, is not strictly penal in nature, relates only to eligibility and is designed to achieve a legitimate governmental purpose.
Accordingly, the order of the Appellate Division should be affirmed, without costs.

. Petitioner has continued to receive public assistance pending the determination of this appeal pursuant to a stay granted by Special Term.

. The regulation was repealed in October, 1973 and replaced by new regulations containing, inter alia, the same proscription and 30-day sanction (see 18 NYCRR 385.7 [a] [3], 385.6 [a] [3], eff Nov. 9, 1973).